BEN DAVIS v. STATE

190 So. 259
Division B
Opinion Filed June 30, 1939

*Coe & McLane,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—Plaintiff in error, Ben Davis, was indicted by a grand jury of Escambia County, Florida, for the crime of murder in the first degree, placed upon trail, and convicted of the crime of murder in the first degree with recommendation for mercy, and was by the trial court sentenced to the state prison at hard labor for the period of his natural life. He has perfected his appeal to this Court and assigns as reversible error the order of the trial court overruling and denying his motion for a new trial. The grounds of the motion for a new trial were: (a) that the verdict·was contrary to the evidence; (b) that the verdict is unsupported by sufficient evidence.

The evidence shows that the deceased, W. A. Bowman, on tht 19th of August, 1938, was a policeman of the City of Pensacola, Florida, and, accompanied by his cousin or nephew, a 13-year-old boy, went to the home of Ben Davis, plaintiff in error, a colored man, then living in the City of Pensacola, and made a search around the premises of the plaintiff in error, and at about the time of the completion of the search plaintiff in error came to his home. There was a conversation between the deceased and plaintiff in error, and the two went into a room of the latter's house. There was testimony to the effect that the defendant remarked to the deceased that he was "getting tired of officers coming around his house," and after an exchange of words the defendant took a pistol from under the mattress of the bed situated in an adjoining room and shot the deceased

some three or four times; that the defendant then ran from his home, with his pistol in his and, got into a car and drove away, and some few months thereafter he was arrested in the State of Alabama and returned to Pensacola for trial.

When the officers of the law reached the scene of the homicide they found the deceased lying on his back with his gun out of his scabbard and on the floor near his right arm. His body had three bullet wounds and a bullet passed through his right arm. It appears from the testimony that the balls entered from the front, evidencing the fact that the deceased was facing the defendant when receiving the wounds. The 13-year-old boy was the only eye witness to the homicide and ran from the building about the time the shots were fired.

The defendant, during the trial of the case, admitted the shooting of the deceased, but claimed or attempted to show self defense. He testified that he and the deceased had been in the whiskey business and the deceased supplied him with whiskey to sell and loaned him money, and on Wednesday prior to the homicide on Friday, the deceased loaned the defendant $10.00, with the understanding that $20.00 would be returned to him by the defendant by 8:00 o'clock, August 19, 1938. There was whiskey found on the premises at the time of the homicide and evidence showed that deceased had delivered a ten-gallon keg of whiskey to the defendant's home shortly prior to the homicide.

There was offered in evidence a statement dated August 28, 1938, and bearing the signature of the defendant, Ben Davis, in which the details of the entire trouble between him and the deceased were recited. The written statement is substantially the same as the evidence given by the defendant during the trial of the case.

It is asserted by counsel for plaintiff in error in his brief and oral argument at the bar of this Court that the evidence adduced was insufficient to show a premeditation or an intent to kill. The evidence is not clear as to how much time intervened from the time that the defendant returned to his home and found the deceased there and the time of firing the fatal shots, but it is manifestly certain that the defendant did not appreciate the presence of the deceased at his home, because he remarked that he was "getting tired of officers coming around" his home. It is not clear what was said and done between the parties after going into the room where the deceased was later found dead. The law does not require premeditation or deliberation for any particular length of time, but it must be a sufficient length of time to enable the slayer, under the circumstances of each case, to form a distinct and conscious intent to kill. This intent to kill can exist in the mind of the slayer a month, a week, a day, an hour, or maybe for a moment before the shot or shots are fired. See Lovett v. State, 30 Fla. 142, 11 So. 550; Stokes v. State, 54 Fla. 109, 44 So. 759. We think the premeditated design or intent to kill was a question to be determined by the jury under appropriate instructions. See Wise v. State, 69 Fla. 260, 67 So. 871; Green v. State, 93 Fla. 1076, 113 So. 121.

It is next contended that the evidence adduced is insufficient to support the verdict of murder in the first degree with recommendation for mercy. It cannot be overlooked that conflicts and disputes do appear in the testimony except as to the fact that the defendant fired the shots that killed the deceased. The 13-year-old boy testified that the defendant shot his cousin or uncle, and several witnesses heard the shots and shortly thereafter saw the defendant come out of his home, get into a car and drive hurriedly

away. If the jury had believed the testimony of the defendant and his witnesses as to the facts leading up to the firing of the fatal shots, it is very probable that the jury would have found a verdict of guilty but would have reduced the degree of the homicide. The jury failed to believe the defendant and his witnesses, or the defendant failed to establish to the satisfaction of the jury his contention of self defense. The evidence is convincing that an agreement existed between the defendant and the deceased about whiskey, as there is no contradiction about the deceased going about the premises of the defendant and that when he obtained a box and placed it near a window and looked through the window, his object no doubt was to observe the size of the stock of whiskey the defendant then had, or this is a reasonable inference to be deducted from all the testimony. It is possible that a verdict for a lower degree of murder, as we see it from the evidence, would have been proper, but we have no right or authority to substitute our judgment or view for that of the jury.

This Court has held that a verdict will not be disturbed where there is sufficient evidence to support it, regardless of the conflicts in the testimony of the witnesses appearing in the case. It has not been made to appear that the jury acted in this case under improper influence. We think there is ample testimony in the record to support the verdict of the jury. See Kirkland v. State, 93 Fla. 172, 111 So. 351; Whitton v. State, 93 Fla. 97, 111 So. 514; Armstrong v. State, 30 Fla. 170, 11 So. 618, 17 L. R. A. 484; Howell v. State, 102 Fla. 612, 136 So. 456, 139 So. 187.

The judgment appealed from is affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices BUFORD and THOMAS not participating as au-

thorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.