MOSE DOUGLAS, alias LEO STONEY, v. STATE OF FLORIDA

10 So. (2nd) 731                                                  June Term, 1942
December 11, 1942                                                      En Banc

*E. M. Magaha,* for appellant.

*J. Tom Watson,* Attorney General, and *Woodrow M. Melvin,* Assistant Attorney General, for appellee.

CHAPMAN, J.:

The appellant, Mose Douglas, was indicted for the murder of Daniel C. Hall on December 1, 1941, in Collier County, Florida, the grand jury presented the indictment in open court on January 19, 1942. The appellant was without funds and the lower court adjudged him insolvent and attorney J. L. Junkin represented the defendant at the trial. We fail to find an order in the record made by the lower court appointing Mr. Junkin as counsel for the appellant. Defendant was placed upon trial and by a jury convicted of the crime of murder in the first degree, and from a death sentence entered in the lower court an appeal has been perfected here. Honorable E. M. Magaha, of the Fort Myers Bar, was appointed attorney for the appellant and has perfected this appeal.

The appellant is a colored man, while the deceased was a white man. The record fails to reflect conflicts or disputes in the testimony, but in the application of the law to the facts in controversy, counsel for the parties reach different conclu-

sions, as shown by the briefs and oral argument heard at the bar of this Court. The defendant below, when on the witness stand, admitted firing the shot that killed the late Mr. Hall. It is contended that the burden of proof rested on the State of Florida to establish premeditated design or the intent of the appellant to kill the deceased, and that in failing to establish or carry this burden as required by law the verdict and judgment entered in the lower court is erroneous.

The appellant, with other colored employees, was working on the farm of Mr. Smoak in Collier County. The appellant had an argument with a colored woman and struck her with an iron pipe and left the field. He met Mr. Smoak and returned to the field with him and trouble arose between appellant and a co-worker by the name of Drummer. He left the field for the second time and obtained a shot gun at the home of Charley Johnson, who lived near by, and was returning to the field to take from Drummer a knife which appellant claimed had been forcibly taken from him by Drummer, employed in the same field. The appellant was returning to the field armed with the shot gun when intercepted by a posse acting as citizens without warrant and comprised of Messrs. Smoak, Hall and other white men about the field, none of whom were officers.

It is shown that Mr. Smoak and the deceased were armed and the appellant hid in some palmettoes and the searching party went through the palmettoes and the deceased passed in a few feet of where the appellant was hiding. It was at this point that the shooting started. Mr. Smoak fired three times at the appellant, but the time thereof with reference to shooting Mr. Hall is not clear from the record. The deceased had a small rifle. The appellant fired on the deceased at close range, killing him instantly. The appellant and the deceased had worked together in the same field and were on good terms, and the record fails to show malice or animus existed between them. The testimony to sustain the premeditated design or intent on the part of the appellant to kill the deceased, if the verdict and judgment is to be sustained, must rest largely on what occurred after the posse found the appellant hidden among the palmettoes, because it is shown that

he was on good terms with the deceased and Mr. Smoak, members of the posse.

Section 782.04, Florida Statutes, 1941, defines murder in the fiirst degree viz:

"782.04. Murder.—The unlawful killing of a human being, when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery, or burglary, shall be murder in the first degree, and shall be punishable by death."

The trial court correctly instructed the jury that the burden of proof rested on the State of Florida to establish each material allegation of the indictment to the exclusion of and beyond a reasonable doubt, and the language so employed on the question of premeditated design or intent to kill is viz:

"An essential element of murder in the first degree is premeditated design and in order to constitute murder in the first degree it must be shown and established beyond every reasonable doubt not only that the accused committed an act wihch resulted in the death of another human being, but it must be so proven that before the commission of the act which results in death that the accused had formed in his mind a distinct and definite purpose to take the life of another human being and deliberated or meditated upon such purpose for a sufficient length of time to be conscious of a well defined purpose and intention to kill another human being, and if then in the execution of such purpose and design he kills another his act is murder in the first degree. It is not necessary that such purpose and intent to kill another human being shall exist for any particular length of time; it is sufficient if between the formation of purpose or intent to kill and the act of killing there elapses enough time that the slayer is fully conscious of a deliberate purpose and intent to kill another human being, if then in pursuance of that purpose and intent he kills another human being, he is guilty of murder in the first degree."

The authorities sustain the instructions as given. See Wise v. State, 69 Fla. 260, 67 So. 871; Richardson v. State,

80 Fla. 634, 86 So. 619; Townsend v. State, 95 Fla. 139, 116 So. 7; Powell v. State, 93 Fla. 756, 112 So. 608; Waterman v. State, 121 Fla. 244, 163 So. 569; Madison v. State, 138 Fla. 467, 189 So. 832, and many other cases.

The case of Richardson v. State, 80 Fla. 634, 86 So. 619, involved the sufficiency of the testimony to establish premeditated design or the intent to kill. The denying declaration of the deceased was offered to sustain this element of the crime which this Court held legally insufficient. The dying declaration is viz:

"I, Ray Butts, realizing that I am about to die, and that it is impossible for me to recover, and being conscious of my condition, and in the very article of death, do make this my dying declaration and state the following to be the truth, the whole truth and nothing but the truth. I started back to the cab and met negro on cab steps I asked him what he wanted and he started to draw his pistol from his bosom I then drew my pistol and shot twice before he fired, his first shot struck me either in the face or shoulder I don't know which after I fell he shot me in the buttox. I had been warned that two negroes were on my train, and they were dangerous and to be careful. That is the reason I did not take any chance and shot first."

The testimony offered to sustain premeditated design to effect death was before this Court in Smithie v. State, 84 Fla. 498, 94 So. 156. It was concluded that where a verdict of murder in the first decree is assailed on the ground of the insufficiency of the evidence, the facts and circumstances from which a jury could have found all the essential elements of the crime alleged must appeal in the record. If the evidence is insufficient to establish premeditated design or intent to kill, then the verdict and judgment of murder in the first degree must be reversed.

The case of Forehand v. State, 126 Fla. 464, 171 So. 241, involved the sufficiency of the evidence to sustain a verdict of murder in the first degree. Trouble arose between two Forehand boys and Pledger, the latter being a deputy sheriff, at a night club in Bay County, Florida. The Forehands had engaged in a private difficulty near the dance hall and officer

Pledger went out to quell the disturbance. A fight followed between the Forehand boys and officer Pledger. The officer had a black jack and a pistol. Lonnie Forehand and the officer clinched and fell to the ground, when Pleas Forehand shot the officer to death. He was convicted of murder in the first degree of William D. Pledger and this court held that the testimony offered by the State to sustain premeditation was legally insufficient and awarded a new trial. See Frank v. State, 121 Fla. 53, 163 So. 223; Stephens v. State, 140 Fla. 825, 190 So. 402.

The facts in Forehand v. State, supra, tend to establish a stronger case of premeditation or intent to kill than the case at bar. There is not a shred of testimony in the record to support premeditation or intent to kill. The appellant and the deceased had worked in the same field and a friendly or cordial relation existed between them. The appellant testified that he had one trigger of the shot gun cocked when going into the palmettoes and the gun accidently fired and killed the deceased. He testified that he did not intend to kill the deceased, but desired to go to the field and take his knife from Drummer. Mr. Smoak was near the deceased when he was killed and the appellant made no effort to shoot him, but ran from the scene with a loaded gun in his hand. If the appellant desired to exterminate the posse searching for him, he would have stood his ground, exhausted his ammunition, and otherwise continued the combat rather than run from the scene. We hold that the evidence offered to establish premeditated design or intent to kill the deceased is legally insufficient to support the verdict and judgment.

The record discloses that the defendant below through counsel seasonably presented a motion for a new trial. It was therein contended that the testimony adduced by the State to sustain the material element of premeditation or design to kill on the part of the defendant was legally insufficient or this material allegation of the indictment had not been established by the State by competent testimony to the exclusion of and beyond a reasonable doubt. The trial court by an appropriate order overruled and denied the motion for a new trial. Section 243 of the Criminal Code

(Chapter 19554, Acts of 1939, Laws of Florida) confers on trial courts the power to adjudge a defendant guilty of a lesser offense included in the indictment of which a defendant was convicted, without formally entering an order granting a new trial, provided no other prejudicial error exists in the record.

Section 310 of the Criminal Code, *supra,* grants to appellate courts similar powers conferred by Section 243, *supra,* on trial courts. If the appellate court is of the opinion that the evidence does not establish the offense of which a defendant is found guilty, but does establish his guilt of a lesser offense included in the indictment, then the appellate court shall reverse the judgment with directions to the trial court to enter a judgment for the lesser offense included in the indictment and pass sentence accordingly. The testimony being sufficient to establish a premeditated design or intent to kill the late Mr. Hall on the part of the appellant, therefore the verdict and judgment of murder in the first degree must be and are hereby reversed. It is our conclusion that the evidence is legally sufficient to establish the crime of murder in the second degree included in the indictment against the appellant.

The judgment appealed from is reversed with directions to the trial court to enter a judgment against the appellant of murder in the second degree and pass sentence accordingly. See Section 310 of the Criminal Code *supra.*

It is so ordered.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, THOMAS and ADAMS, JJ., concur.