## HOWARD B. McKEE v. STATE OF FLORIDA

33 So. (2nd) 50                                    June Term, 1947
December 9, 1947                                         En Banc
Rehearing denied January 13, 1948

*Louis M. Jepeway* and *S. Errol Mestrezat,* for appellant.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, *Glenn C. Mincer,* State Attorney, and *S. O. Carson,* Assistant State Attorney, for appellee.

TERRELL, J.:

Appellant was tried and convicted on an indictment charging him with rape. The jury recommended mercy, motion for a new trial was denied and a sentence of life imprisonment at hard labor in the State penitentiary, was imposed. This appeal is from that judgment.

The primary question presented for our determination turns on the sufficiency of the evidence to support the verdict and judgment.

Appellant contends that the judgment should be reversed because the only direct evidence in support of the charge against him is that of the prosecutrix and that her testimony is incredible because she first reported to the police that defendant attempted to rape her, but five days later she changed her story and proclaimed for the first time that defendant had raped her. It is further contended that she refused to submit to a medical examination immediately after the assault and made no outcry or protest against the defendant at the time of the alleged rape.

From the record it appears that the prosecutrix boarded a down town Miami bus shortly after midnight May 1, 1946, and proceeded to the corner of 27th Avenue and Coral Way, where she was discharged from the bus, about four blocks from her home. Defendant was a passenger on the bus at the same

time and when it moved across the intersection, about sixty feet from where the prosecutrix was discharged, he arose from his seat to leave the bus and as he was leaving it, remarked to the driver, "I believe I will get some of that," or words of similar import. He stalked the prosecutrix for some distance in the direction of her home and struck her from the rear as he overtook her. He contends that he struck her only one time but she says, "he just run up from behind me and jerked me right backwards. He didn't say anything, and before I could know what was happening he had me bent down, and one hand was here and one over here, (indicating) and he was beating my face, and I was hollering as loud as I could and crying for help, and he kept saying "I will kill you," and then he quit hitting me with his right hand, and took hold of my neck, and choked me to keep me from hollering, so he got me quieted down, where I couldn't make a sound." She asserts that she then submitted to intercourse with him because she was in fear of her life.

Defendant stuck to his story that he struck the prosecutrix but one time and that his motive was not rape but robbery. In addition to her verbal testimony, the prosecutrix refuted defendant's story and supported hers with such physical evidence as bruises on her face and body, her left eye was about closed, the right side of her face was bruised, her jaw was swollen and her face was black and blue, she had a cut back of one ear and the other ear was bruised, her throat was swollen and her face was scratched. The discoloration on her face lasted two weeks. One witness described her as "just beat up completely." At the scene of the assault she lost a wrist watch, ear bobs and a flower from her hair, but these were recovered the next morning.

The prosecutrix asserts positively that she cried for help as loud as she could and finally submitted to appellant's demand because she was in fear of her life. The fact of rape brands a woman with a mark that is extremely humiliating and impossible to efface and being so, she is not called on to look up a doctor and submit to an examination for the purpose of verifying her verbal testimony to the act. The result of such an examination would be nothing more than cummulative

evidence and the victim of such an assault is not called on to humiliate herself for that purpose. Neither should the fact that she did not do so militate against her. Likewise the fact that she is alleged to have told two different stories about the incident does not necessarily affect the probative value of her evidence. Her stories were not conflicting and she gave a perfectly logical explanation for the two versions. Any woman of refined virtue would be abashed to announce that she had been raped and for that reason is not called on to simulate the marks incident to such a report. Even if her stories were in conflict, it was one for the jury to resolve and unless it is conclusively shown that they applied a wrong rule of law to it, this court is without power to interfere with their findings.

Under our scheme of administering justice, the jury resolves factual conflicts, a function quite as important as any single function performed by the court. They take an oath to perform that function no less solemn than that taken by the court to perform its function. When it is shown that they have performed that duty faithfully and honestly and reached a conclusion that squares with reason and their theory of the evidence, it takes more than mere difference in opinion as to what the evidence shows, for this court to reverse them. We find no basis whatever for reversal here, except a possible difference of opinion as to what the facts before the jury reveal. Every reasonable deduction from the evidence supports the jury's conclusion.

When the defendant jumped off the bus in pursuit of the prosecutrix and announced to the bus driver, "I believe I will get some of that" any normally sexed jury knows the lingo of the pine barrens, knows what such a declaration imports. A jury of eunuchs might not be so advised. When he follows up his assertion by slugging her into submission it was perfectly logical for a jury of reasonable men to return a verdict of guilty. There is no suggestion that the jury in this case was influenced by any consideration whatever outside the evidence. Much is made of the fact that the prosecutrix did not report the assault on her at once, but this, like other questions raised, was for the jury to resolve and what we have said is a complete answer to it.

After all is said, the consuming thing before the jury was two conflicting stories about a very unfortunate incident. The jury believed the story of the prosecutrix, there is ample evidence to support it, and when this is the case we have so often said that we were powerless to disturb it, that it would now be trite to repeat it. The trial court refused to disturb the finding of the jury, and for this court to do so, would amount to a substitution of our judgment for that of the jury, in an area where we would be little, if any, short of judicial meddlers.

We have read the cases relied on by appellant but we do not think they are in point. We have read the charge of the court and we think it was free from error. We have also considered the contention of appellant that it was error for the trial court to discuss with the jury the eligibility of a convicted person for parole and to read Section 947.16, Florida Statutes 1941, relating to parole to the jury during the trial, but we find no error in this contention.

We are convinced that the evidence was ample to sustain the judgment and that it should be and is hereby affirmed.

Affirmed.

BUFORD, ADAMS and BARNS, JJ., concur.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., dissent.

CHAPMAN, J., dissenting:

The appellant, Howard B. McKee, on July 11, 1946, was indicted by a grand jury of Dade County, Florida, for the crime of rape. He was duly arraigned and entered a plea of not guilty, and shortly thereafter was placed upon trial before a jury in the Circuit Court of Dade County. Evidence was adduced by the State and the defendant and the jury, after hearing the evidence, argument of counsel and charges of the Court rendered a verdict of guilty, with recommendation of mercy. A motion for a new trial on various grounds was presented and by appropriate order denied. The Court below sentenced the appellant to the State Prison at hard labor for a period of his natural life. The defendant below appealed.

The controlling question presented by this appeal is the sufficiency of the evidence adduced by the State to establish

the material allegations of the indictment. The burden of proof by law was on the State of Florida in the court below to establish the guilt of the defendant beyond a reasonable doubt. In many of our adjudicated cases we have held if there was room for differences of opinion between reasonable men as to proof of facts from which ultimate facts are sought to be established or where there is room for such differences as to inferences which may be drawn from conceded facts, these conflicts and disputed issues should be submitted to a jury under appropriate instructions. Holland v. State, 129 Fla. 363, 176 So. 169.

The record discloses that the assaultee at the time of the alleged attack was forty-six years of age, a widow, weighed 146 pounds and the mother of two grown children. The appellant (defendant below) at the time of the alleged attack was thirty-three years of age, married and the father of one child and was living with his family. He had suffered infantile paralysis since he was six years of age and then weighed about 130 pounds and had been classified as 4-F by the Army. He had lived in Miami for about three years at the time and was employed as a food concessioner at the Biscayne Dog Track.

The testimony further discloses that the appellant and assaultee were passengers on the same street car in the early morning of May 1, 1946, and riding toward their respective homes situated on the outskirts of the City of Miami. The street car stopped at 27th Avenue, Coral Way, when the assaultee got off and was then about four blocks from her home. The car crossed the Avenue, when the appellant left the car and followed the assaultee and overtook her about two blocks from where they alighted from the car. The testimony is in sharp conflict in many details as to what occurred after the appellant overtook the assaultee, each party reciting a different version of the controversy.

The appellant denied that he assaulted the assaultee for any purpose other than getting her money; that he concluded from her conversation on the street car that she had money on her person won by her at the races and he simply followed her out for the sole and only purpose of taking her money. He

took her bag and failed to find money in it. It is not disputed that the assaultee had bruises, wounds and discolorations about her neck and body and some scratches about her lower limbs and was highly nervous for several days thereafter. The attack was immediately reported to the officers, which resulted in the arrest of the appellant on the following day.

The assaultee advised the police officers that her assailant only assaulted her and she stuck to the story until a hearing before the Justice of the Peace on the following Monday, when she testified that the appellant raped her. Her reason for not telling the officers that she had been raped was that her son, she feared, would do violence to the assailant, but she advised her son immediately thereafter that she had been raped. One of the police officers suggested prior to trial before the Justice of the Peace that if she had been raped she should be taken to a physician for examination and treatment, but she clung to the story that she had not been raped but only assaulted. The assaultee having stated *first* that she had been assaulted only and afterwards that she had been raped requires a close study and analysis of all testimony as given by her so as to harmonize, if possible, these contradictory statements and arrive at the truth of the controversy. In the case of Coker v. State, 83 Fla. 672, 93 So. 176, we held that where the prosecutrix was the sole witness to the act, her testimony should be rigidly scrutinized to avoid an unmerited conviction for a capital offense.

In the case of Bailey v. State, 76 Fla. 213, 79 So. 730, this Court had before it the question of resistance on the part of an assaultee and in part said:

"The jury are the sole judges of the credibility of the witnesses, and the weight of the evidence, but not of its sufficiency. They must have believed that the prosecutrix told the truth, but what she said did not show sufficient resistance on her part to the defendant's advances to exclude the idea that her opposition to his will was nothing more than pretense; or at any rate that the act was consummated while she, though 'saying I'll ne'er consent, consented.' "

The verdict and judgment challenged on this appeal rests on the uncorroborated testimony of the prosecutrix who ad-

mits that she charged the appellant first with an assault with the intent to rape and second, some four or five days thereafter, changed the charge and testified that the appellant raped her. She declined the suggestion of a police officer that she be examined by a physician prior to trial. The alleged attack, as disclosed by the record, occurred in the yard of a residence and within two blocks of her home but she failed to give an alarm or call for help. The State does not contend that the appellant was armed or then and there had a weapon with which he could injure or hurt the assaultee. When requested by the appellant to remove an under garment, according to her testimony she declined so to do but co-operated with the appellant to the extent of holding it to one side when the act was committed. It is not disputed that the appellant was classed as 4-F by the Army; that he weighed 130 pounds; was 33 years of age and had an attack of infantile paralysis when around six years of age. The assaultee weighed 146 pounds and was 46 years of age. It may be assumed that she enjoyed good health because she had been seeking employment as a waitress.

The crime of rape is easy to prove but difficult to defend and the penalty prescribed by law is severe. It is fundamental that every essential element of the crime of rape should be established by competent evidence beyond a reasonable doubt on the part of the State of Florida before a judgment of conviction should be permitted to stand. The evidence in the case at bar fails to measure up to these requirements. Section 924.34, Fla. Stats. 1941 (FSA), authorizes the appellate court of Florida in certain criminal offenses divided into degrees or when the offense charged includes a lesser offense and the evidence fails to establish the offense of which the defendant was found guilty and the evidence clearly establishes the guilt of the lesser offense, then the judgment may be reversed by an order of this Court with directions to the lower court to enter a judgment for the lesser degree or offense and pass sentence accordingly. See McRane v. State, 148 Fla. 22, 3 So. (2nd) 502; Bronson v. State, 152 Fla. 28, 10 So. (2nd) 718; Douglas v. State, 152 Fla. 63, 10 So. (2nd) 731.

802

It is our conclusion that the evidence is legally insufficient to establish the essentials of the crime of rape but is sufficient to support a judgment for the crime of assault with intent to commit rape. So I think the judgment should be reversed with directions to the trial court to enter a judgment for the crime of assault with intent to commit rape and enter or pass sentence accordingly. See Section 924.34, supra.

THOMAS, C. J., and SEBRING, J., concur.