PER CURIAM.
The appellant has been convicted and sentenced in the Circuit Court for Jefferson County, Florida, upon a jury verdict finding him guilty of the crime of rape without recommendation of mercy. The primary issue made upon appeal relates to the sufficiency of the evidence to support a conviction upon this charge as opposed to assault with intent to rape.
The events out of which the charge arose occurred in the early morning hours of March 24, 1957. The prosecutrix, a twenty year old white woman, was alone in her home with her two infant children after her husband left for work at approximately 3 a. m. Appellant testified that the back door was not locked and he entered the house because it was raining, and that when the woman was roused he grabbed her and struck her to keep her from screaming and to prevent her seeing who he was. He *749 said that he “threw her down and fell right on top of her,” and upon cross examination as to whether he either raped or intended to rape her he acknowledged that his “pants was unzipped” and “I thought about that” but denied any specific intention or attempt to rape her.
When appellant ran away, the prosecu-trix took her two children and went to a neighbor’s house to report the attack. The police officer who first came to her aid said: “She didn’t tell me she had been raped. She told me he completed the job. What she meant by that, I don’t know.” She was given immediate medical attention and told the doctor and investigating officers later on that date that she had not been raped. The testimony as to her story at this time was that “she then said that there was a scuffle there, that she didn’t remember exactly how she got on the floor * * * but she does remember her mouth being torn, her face aching, and she remembers somebody hitting her in the head. * * * She told us at that time that -there had never been any penetration.” Bearing on prosecutrix’s condition at the ■time of her original statement, the officer ■said, “I would say that she was rational. She was considerably concerned about what 2ier husband had to say at the time.”
Testimony of the doctor was that medical "treatment given her was for external injuries only; that he observed extensive blood smears over her body including the •rectal and genital areas and evidence of ■pressure over the end of her spine, but did not make an examination to attempt to determine whether in fact she had been subjected to forcible intercourse because “she said she had not been raped; ” and that •she appeared to be competent and fully able do answer questions at the time.
On the basis of this report an information was prepared and filed charging appellant with assault with intent to commit Tape. Four days later the prosecutrix altered her story of events to relate that she •had actually been raped. In the words of the state’s attorney: “She later saw me and when sworn, told that she was actually raped, at which time, of course, I asked her why she told me before that she hadn’t been penetrated. She told me at that time that she had joined the Church and using her specific words as near as I can, that she had given her heart to God, and although she thought that the people would look down on her if she had actually been raped by a man of this type, that she was going to tell the truth regardless of the consequences and she was ready to swear under oath that there was an actual penetration.” Her statement, upon the inquiry being made “Did anything occur to you, or did you think about it before changing your mind or not ?,” was: “I thought and I prayed about it. Didn’t anybody have anything to do with it but myself. * * * I said no matter what happened, it was up to me to tell the truth, no matter what shame it brought me.”
On April 22, the date set for trial, the grand jury for Jefferson County returned an indictment against appellant charging him with rape, and trial proceeded on that charge. The prosecutrix testified, coinciding with the story of the accused, that throughout the scuffle he was at her back. She further stated, however, that at one point after she was thrown down on her face, her assailant did accomplish penetration, and when asked why she told the doctor she had not been raped, she said she “was kind of afraid the town would look down on me and I didn’t know what my husband would think. I was ashamed, scared, just naturally ashamed for people to know it.” There was no evidence that she told anybody, until four days later, that she had in fact been raped, or that she ever at any time sought or submitted to medical examination or treatment for what it might be worth in corroborating her assertion, or preventing disease or pregnancy.
Motion by defense counsel to reduce the charge to assault with intent to commit rape was denied, and following the verdict *750 and judgment above noted a motion for new trial on grounds of insufficiency of evidence and failure to introduce corroborating testimony after impeachment by inconsistent statements, was denied, and sentence of death imposed.
We are fully cognizant of the long standing doctrine that because of the nature of the offense the direct testimony of the prosecutrix in a rape case need not necessarily be corroborated by independent evidence. Doyle v. State, 39 Fla. 155, 22 So. 272. The rule is, however, subject to the qualification that in order to sustain a conviction without other proof such testimony must be inherently clear and convincing and not materially discredited or impeached. Ex parte Tully, 70 Fla. 1, 66 So. 296; Annotation, 60 A.L.R. 1131. Corroboration, of course, generally goes only to surrounding facts and circumstances and not to the fact of the rape or penetration.
In this case the latter point is the narrow issue in dispute. On this thread hangs the life of this defendant. The pros-ecutrix admits having given contradictory statements with reference to it. Moreover, it appears without contradiction that she neither requested nor received medical advice or treatment following this tragic event in spite of the fact that she must have known of the possibility of contracting a venereal disease as well as a pregnancy by this negro man. These major circumstances going to the very heart of this case, together with a study of the remainder of the record in accordance with the mandate of Section 924.32, Florida Statutes 1957, F.S. A., leads us to the conclusion that the conviction herein is necessarily based upon evidence which as a matter of law falls far short of the “clear and convincing” test cited. Cf. McKee v. State, 159 Fla. 794, 33 So.2d 50, where, in spite of similar contradictory accusations pointed out in the opinion, the record shows the victim’s testimony at trial to have been substantiated by contemporaneous reports to her family at the time of the attack.
It is clear, however, that independent of the prosecutrix’ conflicting statements the evidence does establish and appellant here admits guilt of the lesser included offense of assault with intent to commit rape. Frenette v. State, 158 Fla. 675, 29 So.2d 869; Kite v. State, 126 Fla. 77, 170 So. 445. Pursuant to the provisions of Section 924.-34, F.S.1957, F.S.A., the judgment is reversed with directions that judgment be entered accordingly and sentence imposed for the offense of assault with intent to commit rape.
Reversed and remanded.
THOMAS, HOBSON, DREW, THORNAL and O’CONNELL, JJ., concur.
TERRELL, C. J., dissents.
ROBERTS, J., dissents with opinion.