426 So.2d 1004 (1983)
TIEN WANG, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-1475.
District Court of Appeal of Florida, Third District.
January 11, 1983.
Rehearing Denied March 10, 1983.
*1005 Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and John F. Robenalt and Penny H. Hershoff, Asst. Attys. Gen., for appellee.
Before DANIEL S. PEARSON, and FERGUSON, JJ., and WILLIAM C. OWEN, Jr., (Ret.), Associate Judge.
DANIEL S. PEARSON, Judge.
Premeditation is the "one essential element which distinguishes first-degree murder from second-degree murder." Polk v. State, 179 So.2d 236, 237 (Fla. 2d DCA 1965); Anderson v. State, 276 So.2d 17 (Fla. 1973).
"Premeditation is a fully-formed conscious purpose to kill, which exists in the mind of the perpetrator for a sufficient length of time to permit of reflection, and in pursuance of which an act of killing ensues. .. . Premeditation does not have to be contemplated for any particular period of time before the act, and may occur a moment before the act... . It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it insofar as the life of his victim is concerned." Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2257, 72 L.Ed.2d 862 (1982) (citations omitted).
See also Davis v. State, 138 Fla. 798, 190 So. 259 (1939); Thompson v. State, 397 So.2d 354 (Fla.3d DCA 1981), modified sub nom., State v. Thompson, 413 So.2d 757 (Fla. 1982); Hines v. State, 227 So.2d 334 (Fla.1st DCA 1969); Weaver v. State, 220 So.2d 53 (Fla.2d DCA), cert. denied, 225 So.2d 913 (Fla. 1969); Thus, a "[p]remeditated design to effect the death of a human being is more than simply an intent to commit homicide," Littles v. State, 384 So.2d 744, 745 (Fla.1st DCA 1980), and more than an intention to kill must be proved to sustain a first-degree murder conviction. Miller v. State, 75 Fla. 136, 77 So. 669, 671 (1918).
Guided by these principles, we are compelled to hold that the evidence adduced below by the State, being not inconsistent with the hypothesis that the defendant intended to kill without premeditation, was therefore legally insufficient to prove Tien Wang guilty of first-degree murder. In essence, the evidence showed that Pau-Chin Chou, the defendant's wife, disenchanted with the marriage, chose to separate from Tien Wang. She induced Tien Wang to return to his native Taiwan with a promise, never fulfilled by her, to provide him with a return ticket. The defendant, greatly upset and disturbed at the prospect of their marriage having failed, ultimately made his *1006 way back to Florida to try to effect a reconciliation. He forced his wife to go to Miami with him. At Pau-Chin Chou's request, her stepfather, Donald Kirtley, went to Miami to take her from the defendant. Tien Wang unavailingly pleaded with Kirtley to allow Pau-Chin Chou to remain. A violent quarrel between them ensued, and the defendant stabbed Kirtley to death.
No one witnessed the final altercation between the defendant and Kirtley. Three people saw the defendant chasing Kirtley in the street, and one of them saw the defendant striking Kirtley. There was no direct evidence elicited by the State bearing on the element of premeditation.[1] While the State submits that premeditation was circumstantially shown by the testimony of the people who observed the chase and the one person who saw the repeated striking, such testimony, concededly not inconsistent with a premeditated design to kill, is equally consistent with the hypothesis that the intent of the defendant was no more than an intent to kill without any premeditated design. That being the case, the testimony is insufficient to prove first-degree murder under the well-established rule governing circumstantial evidence:
"When the State relies upon purely circumstantial evidence to convict an accused, we have always required that such evidence must not only be consistent with defendant's guilt but it must also be inconsistent with any reasonable hypothesis of innocence... .
"Evidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, it is not sufficient to sustain conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict. Circumstantial evidence which leaves uncertain several hypotheses, any one of which may be sound and some of which may be entirely consistent with innocence, is not adequate to sustain a verdict of guilt. Even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence." Davis v. State, 90 So.2d 629, 631-32 (Fla. 1956) (citations omitted).
When, as here, the intent of an accused is sought to be established by the actions of the accused, the circumstantial evidence rule applies. See McArthur v. State, 351 So.2d 972 (Fla. 1977); P.R. v. State, 389 So.2d 1078 (Fla.3d DCA 1979); Gellman v. State, 371 So.2d 181 (Fla.3d DCA 1979); K.W.U. v. State, 367 So.2d 647 (Fla.3d DCA), cert. denied, 378 So.2d 349 (Fla. 1979).
In Febre v. State, 158 Fla. 853, 30 So.2d 367 (1947), the accused, in the throes of divorcing his wife, shot and killed a man whom he discovered in a compromising position with her. The court reduced the conviction for first-degree murder to a conviction for manslaughter.
"In this case, defendant did not testify that he killed the deceased in the heat of passion, or that he did not know what he was doing, or that he was so moved by any emotion that he killed the deceased. But his actions speak louder than any testimony he might have given. From the record it appears that those in the house at the time of the killing were of such a temperament and disposition that they reacted to human impulses much more readily, than they could have expressed themselves in any words at trial ....
"The defendant certainly was no model husband. No doubt he had mistreated and abused his wife, though he denied it and though he was still trying to effect a reconciliation. He had been twice before convicted of crime. His excuse for carrying *1007 a pistol, while plausible, was wholly uncorroborated. He had perjured himself in the divorce suit. But he was human and had `the frailty of human nature,' ... when he saw his wife and this nude man, emerging from the very bedroom that he and she had formerly occupied. We conclude that the killing was committed in sudden heat of passion, aroused by adequate provocation." 30 So.2d at 369 (citations omitted).
In Forehand v. State, 126 Fla. 464, 171 So. 241 (1936), the defendant was charged with first-degree murder arising from the death of Pledger, a deputy sheriff, during a quarrel outside a nightclub. The homicide was preceded by a violent altercation involving the defendant, his brother, and a number of other persons. The murder occurred when Pledger attempted to remove the defendant and his brother from the area, and the defendant struck him in the face; Pledger returned the blow with a blackjack, which was seized by the defendant's brother. Pledger and the brother fell to the ground, and the defendant seized a pistol from Pledger and fired several times, killing both men.
The court, noting the rule in Whidden v. State, 64 Fla. 165, 59 So. 561 (1912), stated the principles which governed its disposition of the case:
"[A] well-defined purpose to kill may be induced, compelled, or constrained by anger of such degree as for the moment to cloud the reason and momentarily obscure what might otherwise be a deliberate purpose by its impelling influence.
... .
"As the element of premeditation is an essential ingredient of the crime to murder in the first degree, it is necessary that the fact of premeditation uninfluenced or uncontrolled by a dominating passion sufficient to obscure the reason based upon an adequate provocation must be established beyond a reasonable doubt before it can be said that the accused was guilty of murder in the first degree as defined by our statute." Forehand v. State, supra 171 So. at 243 (citations omitted).
Notwithstanding the court's acknowledgment that "it can be reasonably determined that the altercation which ensured at or near the highway was participated in by the Forehand boys, if indeed not the result of a declared purpose by them to `take the place' and handle Pledger if he interfered...," 171 So. at 242, the court held that it was "entirely possible, even probable, that the assault by Pledger upon the accused with the blackjack aroused the latter's passion which reached its climax when he beheld his brother on the ground under Pledger," and that the evidence was therefore "not legally sufficient to exclude a reasonable doubt as to the existence of a premeditated design of the accused to take the life of Pledger." 171 So. at 244.
The same reasonable possibility exists in this case. The homicide climaxed a day of impassioned efforts by defendant to persuade his wife not to leave him, which, in turn, had been immediately preceded by his having traveled halfway around the world to see her. Mr. Kirtley, her stepfather, thwarted those efforts, and by obstructing defendant gave Pau-Chin an opportunity to leave. Kirtley brusquely rejected the entreaties of the defendant as Tien Wang humbled himself before him and begged Kirtley not to take his wife from him. Even as the passion which was found to have motivated the defendants in Febre and Forehand caused the court to invalidate the first-degree murder convictions in those cases, so too the evidence in this case, although not necessarily establishing that defendant acted "in the heat of passion," is as consistent with that hypothesis as it is with the hypothesis that the defendant acted with premeditated design. Accordingly, Tien Wang's conviction for first-degree murder is reversed with directions to reduce the conviction to one for second-degree murder and resentence the defendant. See Purkhiser v. State, 210 So.2d 448 (Fla. 1968); Sheffield v. State, 73 So.2d 65 (Fla. 1954); Douglas v. State, 152 Fla. 63, 10 So.2d 731 *1008 (1942); Weaver v. State, supra; § 924.34, Fla. Stat. (1981).
Reversed and remanded with directions.
NOTES
[1] The defendant's testimony was that he did not intend to kill Kirtley and that he was "confused" and "not of myself" during the altercation. Even if the jury chose to reject the defendant's testimony, that rejection does not improve the State's case.