557 So.2d 642 (1990)
Stuart DEMURJIAN, Appellant,
v.
STATE of Florida, Appellee.
No. 88-1945.
District Court of Appeal of Florida, Fourth District.
February 28, 1990.
Rehearing Denied March 29, 1990.
Douglas J. Glaid of Douglas J. Glaid, P.A., Fort Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan Fowler, Asst. Atty. Gen., West Palm Beach, for appellee.
WARNER, Judge.
Stuart Demurjian appeals his conviction for first degree murder and sentence to life in prison with a mandatory minimum. He claims that the trial court erred in denying his motion for judgment of acquittal on the grounds that the circumstantial evidence presented by the state was insufficient to establish premeditation and was consistent with the hypothesis that he acted with no premeditated intent. We disagree and affirm.
The victim, Donna Stross, and appellant had an ongoing acquaintance revolving around betting on football games. By the end of the 1986 football season the appellant owed Donna close to $2,700. By June of 1987 appellant had not paid Donna, and Donna, being unemployed, was anxious to get the money back. According to appellant's statement to police Donna came looking for him on Saturday, June 13, 1987, and had an appointment to meet him at his house at 10:00 p.m. When she arrived, they discussed the money appellant owed her and they had a "physical disagreement" *643 regarding the subject. She told him that if he didn't agree to the payments she was going to get someone to collect the money for her and that it would be easier to deal with her than with hospital bills. Appellant then ordered her to leave. According to his statement, they argued, and he tried to lead her out by the shoulder. At that point, appellant said that she grabbed a knife from the kitchen drainboard and came after him. Appellant grabbed the knife from her and "accidently" ended up stabbing her one or two times in the stomach, killing her. He hid her body in the utility closet and did not dispose of it until the following night when he dragged it out of the house behind his car. The body was subsequently discovered, and later events led to his arrest. There were no witnesses to the murder.
The testimony from the medical examiner at trial revealed a different story of what occurred. The medical examiner testified that Donna had died from multiple stab wounds. She suffered four wounds to her left arm, lacerations to her face, contusions on her lips, her nose was fractured and had a laceration, and she had an area of hemorrhage the size of a fist present on her skull which was most likely caused by a flat surface, such as when a victim hits a wall or a floor. The medical examiner testified that all of these wounds occurred while she was still alive. He described that the four wounds on her left arm were defensive wounds which probably occurred as she attempted to grab the knife and in efforts to raise her arm and defend herself.
The chest wounds, at least six in number, penetrated her lung and her liver. These were lined up as though the victim had been lying on her back when stabbed, although the medical examiner could not testify conclusively to that. Nevertheless, the fatal chest wounds were all consistent with the victim lying on the floor. Thus, the evidence the state presented was consistent with a hypothesis that the appellant attacked the victim with the knife which she attempted to ward off until she fell to the floor. The appellant then stabbed her six times causing death.
Recently in Cochran v. State, 547 So.2d 928 (Fla. 1989), the supreme court reiterated the standard to be used in reviewing a challenge to the legal sufficiency of circumstantial evidence on the element of premeditation so as to exclude a verdict for first degree premeditated murder.
Appellant correctly points out that in order to prove a fact by circumstantial evidence, the evidence must be inconsistent with any reasonable hypothesis of innocence. McArthur v. State, 351 So.2d 972, 976 n. 12 (Fla. 1977). Where the element of premeditation is sought to be established by circumstantial evidence, the evidence relied upon by the state must be inconsistent with every other reasonable inference. Wilson v. State, 493 So.2d 1019 (Fla. 1986); Hall v. State, 403 So.2d 1321 (Fla. 1981).
But the question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, the verdict will not be reversed on appeal. Heiney v. State, 447 So.2d 210, 212 (Fla.), cert. denied, 469 U.S. 920, 105 S.Ct. 303, 83 L.Ed.2d 237 (1984); Williams v. State, 437 So.2d 133 (Fla. 1983), cert. denied, 466 U.S. 909, 104 S.Ct. 1690, 80 L.Ed.2d 164 (1984); Rose v. State, 425 So.2d 521 (Fla. 1982), cert. denied, 461 U.S. 909, 103 S.Ct. 1883, 76 L.Ed.2d 812 (1983). The circumstantial evidence standard does not require the jury to believe the defense version of facts on which the state has produced conflicting evidence in the light most favorable to the jury's verdict. Buenoano v. State, 478 So.2d 387 (Fla. 1st DCA 1985), review dismissed, 504 So.2d 762 (Fla. 1987).
Cochran at 930. The jury has the right to reject the defendant's version of events, and so long as there is sufficient competent evidence to support a finding of premeditation, the court should accept the jury's evaluation of the evidence. Cochran, 547 So.2d 928; Songer v. State, 322 So.2d 481 (Fla. 1975). In Songer the supreme court specifically rejected the contention of the *644 defendant that his interpretation of circumstantial evidence should be accepted completely unless it is specifically contradicted. Nor must the state "rebut conclusively every possible variation of events which could be inferred from the evidence" but must only introduce evidence which is inconsistent with defendant's version in order to overcome a motion for judgment of acquital. State v. Law, 559 So.2d 187 (Fla. 1989).
Applying these principles to the facts of this case, there was sufficient competent evidence to put before the jury for its evaluation on the question of premeditation. As this court said in Johnson v. State, 486 So.2d 657, 659 (Fla. 4th DCA 1986):
Premeditation may be deduced from such circumstances as the manner of the attempted murder and the nature and kind of wounds inflicted. Welty v. State, 402 So.2d 1159 (Fla. 1981). Premeditation need not refer to a design to take the person's life that originated a substantial period of time before the event; premeditation may occur a matter of moments before the murderous act, even after a battery has begun. See, e.g., Buford v. State, 403 So.2d 943 (Fla. 1981).
Premeditation must be established by factual circumstances.
Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted. It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned.
Larry v. State, 104 So.2d 352, 354 (Fla. 1958). In Larry, the victim was the aggressor in the fight, but due to the previous disputes between the parties including threats by the victim to the appellant, and the nature and manner of the wounds inflicted, the court held the evidence sufficient to warrant an inference of premeditation.
The facts of this case are similar. The victim and the appellant were not on good terms, and the victim was threatening the appellant. While the victim may have started the fight, it is clear from the medical evidence that she was defending her life, and the multiple number of stab wounds together with these other factors provides sufficient competent evidence to warrant an inference of premeditation. The jury does not have to believe appellant's version, especially when it was directly contradicted by the medical testimony.
Appellant claims that the Tien Wang v. State, 426 So.2d 1004 (Fla. 3d DCA 1983) justifies reversal. However, we find that Tien Wang is distinguishable in that the Tien Wang court grounded its reversal on cases which constructed a reasonable hypothesis that a murder was convicted in "the heat of passion" which may negate the element of premeditation. Such a "heat of passion" argument was neither made nor is it available in this case.
We therefore affirm the final judgment and conviction of appellant.
WALDEN, J., concurs.
GLICKSTEIN, J., dissents with opinion.
GLICKSTEIN, Judge, dissenting.
In Dr. B.H. Levy's Cardozo and Frontiers of Legal Thinking (1965), he says: "People expect equality from the law. Their feelings are violated if A receives one penalty and B another for the same illegal act." Id. at 50.
The facts in this case point to murder in the second degree, and for that the defendant should be convicted. I would reverse and remand with direction to enter judgment for nothing more than this offense, based upon my perception  as defense counsel, prosecutor and judge  of similar *645 altercations. To say that there was premeditation here is to say there is premeditation in every record on appeal of fatal fights  drunk or sober  that come in and out of this courthouse.
Appellant's hypothesis of innocence is that the victim came to his house while intoxicated, was upset when appellant refused to agree to a payment schedule and thereafter attacked him with a knife. In the ensuing struggle he took the knife from her and stabbed her to death.[1] The state offered the following to refute the evidence supporting appellant's hypothesis of innocence. The victim was not a violent person, but appellant had displayed his temper on two occasions. First, when his favorite football team lost he tried to burn a pile of papers. Second, Kenny testified that he saw appellant throw some tools on the ground while having trouble fixing a car. The state also showed that the set of knives, from which the murder weapon came, was kept in a drawer.[2] Dr. Wright's testimony formed the major support for the state's allegation of premeditation. The victim was stabbed a total of ten times and suffered contusions and lacerations to her face which were caused by blunt trauma.
In my opinion, these facts do not contradict appellant's version of the facts. "A defendant's version of a homicide can not be ignored where there is absence of other evidence legally sufficient to contradict his explanation." Mayo v. State, 71 So.2d 899, 903 (Fla. 1954). The most telling testimony in support of premeditation would have been that the three stab wounds to the liver appeared to line up as if she had been lying down when she was stabbed. However, Dr. Wright stated that he could not say conclusively that she was lying down. Without a more certain opinion, I do not believe that appellant's hypothesis of innocence  that he killed her without premeditation  was excluded or that premeditation was proved beyond a reasonable doubt.
NOTES
[1] At trial appellant's defense was self-defense. It is clear the jury believed that appellant's actions were beyond the scope of self-defense.
[2] The state suggests the evidence shows there was no knife on the drainboard Saturday night. Kenny, the only other person there Saturday afternoon, only testified he didn't see any knives on display. This does not mean there was no knife on the drainboard Saturday evening after dinner.