402 So.2d 1194 (1981)
Milton Lewis McILWAIN, Appellant,
v.
STATE of Florida, Appellee.
No. 79-310.
District Court of Appeal of Florida, Fifth District.
July 8, 1981.
Rehearing Denied August 25, 1981.
*1195 W. Ford Duane and Mitchell J. Frank, of Robertson, Williams, Duane, Lewis, Briggs & Ranson, P.A., Orlando, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Phillip D. Havens, Asst. Atty. Gen., Daytona Beach, for appellee.
SHARP, Judge.
McIlwain appeals from a final judgment entered after a jury verdict adjudicating him guilty of a sexual battery on a seventeen year old boy, pursuant to section 794.011(4), Florida Statutes (1977). This section makes it a first degree felony to sexually batter a person over eleven years of age, when accomplished without that person's consent, and when the person is "physically helpless to resist." "Physically helpless" is defined as when a person "is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act."[1] McIlwain argues that the evidence was insufficient to show that the boy was physically unable to communicate his unwillingness to the battery, or that it was done without his consent.[2] We disagree.
Although the appellate courts in the not so distant past reweighed and closely scrutinized the testimony of a victim of rape or sexual battery[3] and frequently reversed convictions because the appellate court disbelieved the complaining witness,[4] *1196 the Florida Supreme Court has wisely put a stop to that practice.[5] In sexual battery cases as well as any other kind of criminal case the appellate court must determine:
[A]fter all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, [whether] there is substantial, competent evidence to support the verdict and judgment. Legal sufficiency alone, as opposed to evidentiary weight, is the appropriate concern of the appellate tribunal.
Tibbs v. State, 397 So.2d 1120 (Fla. 1981).
The victim testified that McIlwain, a dentist he met at a restaurant where he worked, offered to do work on his teeth for no fee after he got off work. His parents gave their consent. After work one evening at approximately 10:00 p.m. the boy went to McIlwain's office. McIlwain fixed his teeth and then offered to hypnotize the boy to help him with his school work. The boy agreed. The dentist gave the boy nitrous oxide or "laughing gas" through a face mask which the boy said covered his mouth and nose (although there was also evidence it only covered his nose). McIlwain rubbed the boy's arms, legs and back, and urged him to relax. He then performed the sexual battery on the boy. After the mask was removed, the boy felt dizzy but was able to get up and drive himself home. His parents observed him shaking, sobbing and trembling. They called the police, and some three hours later the boy was calm enough to tell them what happened.
The boy testified that he was conscious and aware of what McIlwain was doing, although because of his lack of sexual experience, he did not guess what McIlwain was planning to do to him. He said he could not resist, and he denied he consented to the battery.
I couldn't believe that it was happening, but I knew it was happening.
... .
I thought I could get up, but I couldn't
I felt kind of heavy.
... .
I felt or knew that I could get up, but I couldn't. That is the only feeling I felt.
... .
I couldn't respond, you know.
... .
Then I kind of got disgusted at myself because I wanted to get up, but I couldn't.
Two expert witnesses gave persuasive testimony for McIlwain. Mr. McCawley, an expert in hypnosis, testified that David could not have been hypnotized because the use of nitrous oxide minimizes the effect of hypnosis. He said that hypnosis does not render a person helpless physically, nor can a person be made to do something against his moral code under hypnosis. Dr. Tabak, a dentist from Miami and the past president of the Florida Dental Society of Anesthesiology, was qualified as an expert in the use of nitrous oxide in dentistry. He testified that under the facts in this case, because the boy was aware of his surroundings and able to reason, he was not "physically helpless" in the sense of being unable to resist the battery. He said that nitrous oxide is the mildest kind of general anesthetic which produces a mild analgesia  a feeling of euphoria and well-being which enlarges a patient's pain threshold, but does not render him unresponsive. However Tabak contradicted McCawley because he said dentists did use hypnotism in conjunction with nitrous oxide. He also admitted some patients are more sensitive to the gas than others, and that if given too heavy a dose, the patient becomes immobilized and is unable to respond to the dentist's commands. He also admitted the dose of gas could be made stronger if given through a mask covering the nose and mouth, and by adjusting the machine.
The sexual battery statute still requires proof by the State (where the victim is over 11 years of age) that the victim did not consent to the battery. To establish lack of consent under the old statute, courts required the State to prove that the victim *1197 fought, screamed, and did all in her power to avoid the rape.[6] Under the new statute, "consent" is defined as the "intelligent, knowing, and voluntary consent ... not ... coerced submission."[7] Proof of lack of consent now encompasses a much broader field and does not require proof of physical resistance where other circumstances show the victim did not intelligently and knowingly agree to the battery.[8]
There is sufficient evidence in this record to support the jury's finding that the victim did not intelligently consent to the battery because of his youth, inexperience, and the effects of the hypnotism and nitrous oxide.[9] We also conclude that there is sufficient evidence to sustain the jury's finding that the victim was, because of those same factors, "physically unable to communicate his unwillingness" to the battery and thus he was "physically helpless to resist."[10] In this case both were jury questions.
Under our scheme of administering justice, the jury resolves factual conflicts, a function quite as important as any single function performed by the court. They take an oath to perform that function no less solemn than that taken by the court to perform its function. When it is shown that they have performed that duty faithfully and honestly and reached a conclusion that squares with reason and their theory of the evidence, it takes more than mere differences in opinion as to what the evidence shows, for this court to reverse them. We find no basis whatever for reversal here, except a possible difference of opinion as to what the facts before the jury reveal.
McKee v. State, 159 Fla. 794, 33 So.2d 50, 52 (1947).
AFFIRMED.
ORFINGER and COBB, JJ., concur.
NOTES
[1] § 794.011(1)(d), Fla. Stat. (1979).
[2] McIlwain also argues the lower court committed error in not dismissing the amended information because it did not state why the boy was physically helpless to resist and in not granting his motion for a bill of particulars. No reversible error was shown on either point. The information fairly apprised him of the charge, State v. Jones, 312 So.2d 483 (Fla. 4th DCA), cert. denied, 323 So.2d 274 (Fla. 1975), and he had access to the boy's statement and deposition well before trial. Those documents contained the basic substance of the State's case against him which was presented at the trial. Hughes v. State, 103 So.2d 207 (Fla. 2d DCA 1958).
[3] Tibbs v. State, 337 So.2d 788 (Fla. 1976); Paramore v. State, 238 So.2d 604 (Fla. 1970); Berezovsky v. State, 335 So.2d 592 (Fla. 3d DCA 1976), aff'd in part and rev'd in part, 350 So.2d 80 (Fla. 1977), on remand, 351 So.2d 764 (Fla. 3d DCA); O'Bryan v. State, 324 So.2d 713 (Fla. 1st DCA), cert. denied, 336 So.2d 1184 (Fla. 1976).
[4] Truluck v. State, 108 So.2d 748 (Fla. 1959); Coker v. State, 83 Fla. 672, 93 So. 176 (1922); Smith v. State, 362 So.2d 417 (Fla. 1st DCA 1978); Johnson v. State, 118 So.2d 806 (Fla. 2d DCA 1960).
[5] Tibbs v. State, 397 So.2d 1120 (Fla. 1981).
[6] Berezovsky v. State, 335 So.2d 592 (Fla. 3d DCA 1976), aff'd in part and rev'd in part, 350 So.2d 80 (Fla. 1977); O'Bryan v. State, 324 So.2d 713 (Fla.1st DCA), cert. denied, 336 So.2d 1184 (Fla. 1976); Johnson v. State, 118 So.2d 806 (Fla. 2d DCA 1960).
[7] § 794.011(1)(h), Fla. Stat. (1979).
[8] Hufham v. State, 400 So.2d 133 (Fla. 5th DCA 1981); see State v. Melendez, 392 So.2d 587 (Fla. 4th DCA 1981).
[9] Ralston v. State, 350 So.2d 791 (Fla. 3d DCA 1977), cert. denied, 364 So.2d 890 (Fla. 1978); Farabee v. State, 336 So.2d 1281 (Fla. 2d DCA 1976), cert. denied, 345 So.2d 422 (Fla. 1977).
[10] Cf. Hicks v. State, 362 So.2d 730 (Fla. 3d DCA 1978), cert. denied, 370 So.2d 461 (Fla. 1979); Spencer v. State, 332 So.2d 30 (Fla. 1st DCA 1976) (issue of degree of force under § 794.011(3) was a jury question).